UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHASITY SNYDER,

                              Plaintiff,

v.                                                   8:14-CV-0328 (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

OFFICE OF MARK SCHNEIDER              MARK A. SCHNEIDER, ESQ.
  Counsel for Plaintiff
57 Court St.
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.             DANIEL R. JANES, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

Glenn T. Suddaby, Chief United States District Judge,

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Chasity Snyder ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 15.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on April 19, 1986. (T. 182.) She graduated high school. (T. 206.) Generally, Plaintiff's alleged disability consists of depression, anxiety, and a learning disorder. (T. 205.) Her alleged disability onset date is March 1, 2010. (T. 201.) Her date last insured is September 30, 2010. (*Id.*) She previously worked as a certified nurse's aide ("CNA") and cashier. (T. 206.)

### B. Procedural History

On September 22, 2010, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income Benefits ("SSI") under Title XVI, of the Social Security Act. (T. 201.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 18, 2012, Plaintiff appeared before the ALJ, Mary Sparks. (T. 29-63.) On January 25, 2013, ALJ Sparks issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 5-23.) On February 14, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 10-17.) First, the ALJ found that Plaintiff met the insured status requirements through September 30, 2010 and Plaintiff had not engaged in substantial gainful activity since March 1, 2010. (T. 10.) Second, the ALJ found that Plaintiff had

the severe impairments of mild foraminal narrowing of the cervical spine, obesity, and depression. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 11-13.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work; however, she could never climb ladders, ropes or scaffolds; she was limited to performing simple, repetitive tasks in low stress occupations; and she could only have occasional interaction with the public and co-workers. (T. 13.)[1] Fifth, the ALJ determined that Plaintiff was unable to perform any past relevant work; however, there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. (T. 15-17.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly assess all of Plaintiff's impairments. (Dkt. No. 12 at 11-18 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to properly evaluate the medical opinion evidence in the record. (*Id.* at 18-20.) Third, Plaintiff argues the ALJ erred in her assessment of Plaintiff's credibility. (*Id.* at 20-27.) Fourth, and lastly, Plaintiff argues the ALJ erred in her step five determination. (*Id.* at 27-31.)

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

### B. Defendant's Arguments

In response, Defendant makes four arguments. First, Defendant argues the ALJ properly assessed Plaintiff's impairments at step two. (Dkt. No. 15 at 6-11 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ's RFC determination was supported by substantial evidence. (*Id.* at 11-17.) Third, Defendant argues the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 17-19.) Fourth, and lastly, Defendant argues the ALJ's step five determination was supported by substantial evidence. (*Id.* at 19-21.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If

5

the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Assessed Plaintiff's Impairments.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 6-11 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff asserts that she is disabled due to the combination of her impairments consisting of a spinal disorder, mental impairments, obesity, pain and "her other exertional and non-exertional limitations." (Dkt. No. 12 at 11 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ failed to consider Plaintiff's obesity "as either a severe impairment in and of itself or in combination with her other impairments." (*Id.* at 15.)

The ALJ properly assessed Plaintiff's obesity. First, the ALJ determined that Plaintiff's obesity was a severe impairment at step two. (T. 10.)[2] Further, the ALJ thoroughly discussed Plaintiff's obesity in her decision. The ALJ also acknowledged the

---

[2] Plaintiff did not alleged obesity as a disabling impairment in her applications. (T. 205.)

6

Social Security Ruling which directs ALJs to take into consideration a plaintiff's obesity individually and in combination with other impairments when formulating an RFC. (*Id.*) Ultimately, the ALJ determined that Plaintiff's obesity contributed to limitations in her ability to stand and walk. (*Id.*)

In addition, the Second Circuit has held that "an ALJ implicitly factor[s] a claimant's obesity into his RFC determination by relying on medical reports that repeatedly noted [the claimant's] obesity and provided an overall assessment of her work-related limitations." *Drake v. Astrue,* 443 F. App'x 653, 657 (2d Cir. 2011). Treatment notes from Plaintiff's primary care providers at CVPH Health Care Center noted that Plaintiff was overweight. (T. 351, 366, 374, 379, 381, 396, 398, 402, 403, 473.) Perkins Chiropractic and Physical Therapy also noted Plaintiff's obesity. (T. 418.) The ALJ discussed the medical records from Plaintiff's primary care providers and chiropractor, thus implicitly factoring in Plaintiff's obesity.

The ALJ properly addressed Plaintiff's obesity at step two of the sequential process and determined that it was a severe impairment. The ALJ proceeded to conduct an assessment of the limiting effects of Plaintiff's obesity on her other impairments, reasoning that the combined limiting effects "may be greater than might be expected without obesity." (T. 11.) The ALJ properly analyzed Plaintiff's obesity at all steps in the sequential process; therefore, remand is not necessary.

### B.    Whether the ALJ's RFC Determination was Supported by Substantial Evidence.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 11-17 [Def.'s Mem. of Law].) The Court adds the following analysis.

7

A plaintiff's RFC is what he or she is capable of doing despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). A plaintiff's RFC is determined by considering all relevant evidence, consisting of: physical abilities and symptoms including pain, and descriptions, including that of the plaintiff, of limitations which go beyond symptoms. *Id.*

    i.)    Physical RFC

Plaintiff argues the ALJ's RFC assessment failed to properly evaluate Plaintiff's alleged inability to use her right hand due to numbness and her need to lay down due to pain. (Dkt. No. 12 at 28-29 [Pl.'s Mem. of Law].)[3] To be sure, the ALJ's RFC determination does not provide limitations regarding Plaintiff's ability to use her hands. (T. 13.) However, the RFC determination, absent additional limitations in the ability to use her hands, was supported by substantial evidence. The ALJ acknowledged Plaintiff's testimony regarding the numbness in her right dominant hand and determined that her allegations were not supported by the medical evidence in the record. (T. 14.) Specifically, the ALJ relied on objective medical evidence from Craig Blagoue, D.C., which showed no indication of nerve compression, electrodiagnostic studies that showed no abnormality, and notations that indicated minimal subjective decrease in sensation in the right upper extremity. (*Id.*) In formulating her RFC determination, the

---

[3] Plaintiff argues the ALJ failed to take into consideration Plaintiff's pain as a non-exertional impairment. (Dkt. No.12 at 16-17 [Pl.'s Mem. of Law].) Although Plaintiff asserts the ALJ's RFC is not supported by substantial evidence because she failed to take into consideration limitations imposed by Plaintiff's pain from her spinal impairment, essentially what Plaintiff is arguing is that the ALJ did not properly assess Plaintiff's credibility regarding the limitations imposed by pain stemming from her physical impairments. This alleged point of error is discussed in Part IV.D.

8

ALJ properly relied on objective medical evidence which did not support Plaintiff's alleged limitations on the use of her hands.

Plaintiff argues the ALJ erred in failing to take into consideration her need to lay down throughout the day. (Dkt. No 12 at 28-29 [Pl.'s Mem. of Law].) The Plaintiff fails to provide any evidence from the record to support this assertion. Further, a review of the record failed to provide any indication from medical providers that Plaintiff needed to lay down during the course of her day due to her impairments. Therefore, the ALJ did not err in her RFC determination by not including Plaintiff's need to lay down during the day because the medical evidence did not support this allegation.

ii.) Mental RFC

Plaintiff argues the ALJ failed to properly account for Plaintiff's mental impairments in her RFC determination, such as limitations arising from depression, anxiety, and a learning disability. (Dkt. No. 12 at 17, 28, 30 [Pl.'s Mem. of Law].) In making her mental RFC determination the ALJ relied on the medical opinion evidence from Plaintiff's treating providers, such as Wendy Gilchrist, M.D. and consultative examiner, Brett T. Hartman, Psy.D. (T. 11-13, 15.) Plaintiff specifically alleges her mental impairments would cause her to have difficulty with memory and carrying out tasks. (Dkt. No. 12 at 28 [Pl.'s Mem. of Law].)

The ALJ was proper in her assertion that the medical record failed to establish limitations greater than those assessed by Dr. Hartman in his medical source statement. Dr. Hartman observed that Plaintiff's attention and concentration were "mildly impaired." (T. 308.) He observed that Plaintiff's memory was "generally intact." (*Id.*) Dr. Hartman ultimately opined Plaintiff was capable of performing simple and rote tasks. (T. 309.)

9

Plaintiff's treating physicians noted that Plaintiff's depression was treated with medication, which worked well. (T. 374, 377, 401.) Therefore, the medical evidence in the record failed to establish greater limitation than those imposed by Dr. Hartman and Plaintiff's treating physicians.

Plaintiff also argues the ALJ failed to properly take into consideration Plaintiff's learning disability. (Dkt. No. 12 at 20 [Pl.'s Mem. of Law].) First, in the hypothetical posed to the vocational expert ("VE") the ALJ described her hypothetical individual as having a special education diploma and who received special education for "a language disorder." (T. 56.) Therefore, the ALJ took into consideration Plaintiff's learning disability in posing a hypothetical to the VE, which ultimately became her RFC determination. Based on the ALJ's RFC hypothetical, the VE testified that there were occupations in the national economy an individual with Plaintiff's learning disability could perform.

Plaintiff argues she could not perform an occupation the VE provided, due to the language level of the occupation. (Dkt. No. 12 at 30 [Pl.'s Mem. of Law].) The VE testified that Plaintiff could perform work as an assembler which, according to the Dictionary of Occupational Titles, has a reading level of 2.[4] Although Plaintiff claims she

---

[4] Reading level 2 is defined as:

Reading: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes. Writing: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs. Speaking: Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.

APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702.

10

could not perform at a reading level of 2, the record failed to support this assertion. As Defendant aptly asserts, although the record contained school records indicating Plaintiff was a "language impaired student," Plaintiff was able to graduate high school and earn a certified nursing assistant certification and work as a CNA for a period of time. (Dkt. No. 15 at 20 [Def.'s Mem. of Law].) Evidence does not support Plaintiff's assertion.

Therefore, substantial evidence supported the ALJ's physical and mental RFC determination. Remand is not necessary, because the ALJ relied on the medical opinion evidence in the record, which failed to establish limitations greater than those imposed in the RFC.

### C. Whether the ALJ Properly Assessed the Medical Opinion of Consultative Examiner, Brett T. Hartman, Psy.D.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 15-16 [Def.'s Mem. of Law].) The Court adds the following analysis.

When evaluating medical opinion an ALJ should take into consideration the examining relationship, the treatment relationship, the supportability of the opinion, the consistency of the opinion, any specialization of the source providing the opinion, and any "other factors." 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Plaintiff argues the ALJ erred in providing consultative examiner Dr. Hartman "great weight." (Dkt. No. 12 at 18-20 [Pl.'s Mem. of Law].) An ALJ "is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants," particularly where the consultant's opinion is supported by the weight of the evidence. *Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978 at

*4 (N.D.N.Y. June 7, 2010), *see also Monguer v. Heckler,* 722 F.3d 1033, 1039 (2d Cir.1983) (a consultative examiner's opinion can constitute substantial evidence in support of an ALJ's determination).

Dr. Hartman's opinion was consistent with the other medical evidence in the record and the ALJ did not err in affording his opinion "great weight."  As discussed in Part IV.B, Dr. Hartman ultimately opined Plaintiff was capable of performing simple and rote tasks.  (T. 309.)  Dr. Hartman's medical source statement was consistent with treatment notes from Plaintiff's providers.  Dr. Gilchrist observed that Plaintiff's mental health symptoms improved with medication.  (T. 374, 377, 401.)  Dr. Gilchrist also observed normal mental health examinations.  (T. 401-403.)  Therefore, the ALJ did not err in affording Dr. Hartman's opinion "great weight," because it was supported by other opinion evidence in the record.  Further, Dr. Hartman's medical source statement was the only opinion in the record to provide functional limitations based on Plaintiff's mental health impairments.  Therefore, remand is not necessary because the ALJ properly afforded the opinion of Dr. Hartman "great weight."

### D. Whether the ALJ Properly Assessed Plaintiff's Credibility.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 17-19 [Def.'s Mem. of Law].)

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's]

subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

13

Here, the ALJ determined that Plaintiff's medically determinable impairments could "reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (T. 14.) Plaintiff argues the ALJ did not sufficiently explain what evidence supported her determination. (Dkt. No. 12 at 24 [Pl.'s Mem. of Law].)

The ALJ's credibility determination was supported by substantial evidence and the ALJ sufficiently explained her decision. In making her credibility determination the ALJ discussed Plaintiff's testimony regarding her alleged mental and physical limitations. (T. 14.) The ALJ then specifically analyzed Plaintiff's neck pain and arm numbness, Plaintiff's obesity, and Plaintiff's depression. (T. 14-15.) Within each discussion the ALJ cited specific medical evidence in the record which the ALJ concluded did not support the limitations alleged. The ALJ also discussed Plaintiff's activities of daily living throughout her decision and Plaintiff's treatment and medication. The ALJ specifically addressed Plaintiff's use of medication to relieve her depressive symptoms and headaches, and her chiropractic care for her neck pain. (T. 14.) The ALJ's decision made clear her reasoning; further, where an ALJ's reasoning and adherence to the Regulations was clear, she was not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). Therefore, the ALJ sufficiently explained her credibility determination and remand is not necessary.

**ACCORDINGLY**, it is

ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

ORDERED that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

ORDERED that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: October 30, 2015
Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief, U.S. District Judge